IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VASILIY DULGIYER, *Plaintiff,* v. DEPUY SYNTHES, et al., *Defendants.* | CIVIL ACTION NO. 23-3889 |

**Pappert, J.**                                                                                              March 5, 2024

**MEMORANDUM**

Vasiliy Dulgiyer, who immigrated to the United States from the Republic of Moldova, sued DePuy Synthes, Synthes USA Products, LLC and Johnston & Johnson ("Synthes Defendants"), as well as Jabil Inc. and Jabil Brandywine Inc., ("Jabil Defendants"), alleging national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act. He also asserts claims of civil conspiracy and intentional infliction of emotional distress. Dulgiyer alleges he was given smaller annual merit-based salary increases than similarly situated American-born coworkers. He further claims that when he complained, he was laughed at by supervisors who essentially told him he was lucky to be in this country at all.

The Synthes and Jabil Defendants separately move to dismiss Dulgiyer's complaint, contending his discrimination and retaliation claims are barred by the statute of limitations and that he fails to adequately allege intentional infliction of emotional distress and civil conspiracy claims. The Synthes Defendants also argue Dulgiyer failed to exhaust administrative remedies for all claims against Johnson &

1

Johnson and for all retaliation claims against them. The Court grants the motions in part and denies them in part. Dulgiyer may amend his Complaint to the extent he can address many of the deficiencies discussed below.

I

Vasiliy Dulgiyer moved to the United States from the Republic of Moldova in 2001. (Compl. ¶ 1, ECF No. 1.) He worked as a computer numeric control ("CNC") machinist for Defendants from August 2005 until he was terminated in February 2022. (*Id.* ¶¶ 11-12, 31.) Throughout his employment, his employer's name changed several times, but his immediate colleagues remained the same. (*Id.* ¶ 13.)

Dulgiyer speaks with a Romanian accent. English is not his native language. (*Id.* ¶ 1.) He was eligible for an annual merit-based salary increase of 4-5%, "and possibly more." (*Id.* ¶ 15.) Supervisors "and other American born citizens working for Defendants" determined how much of an increase employees would get. (*Id.* ¶ 16.) Dulgiyer allegedly did not receive pay increases that reflected the quality of his work, receiving instead smaller increases than "similarly situated American born CNC Machinists," who allegedly received increases of 4-5% regardless of their performance. (*Id.* ¶¶ 17-19.) Dulgiyer alleges one American machinist received a 4.5% annual raise the same year he committed a "major violation," while Dulgiyer, who committed no violations, only received a 3% increase. (*Id.*)

When Dulgiyer complained to other employees and supervisors, they allegedly laughed at him and told him he should appreciate being in America, where he had a "dream life" compared to the one he would have in Moldova. (*Id.* ¶¶ 20, 23.) Because his complaints were neither investigated nor resolved, Dulgiyer dual-filed a charge of

discrimination with the Pennsylvania Human Relations Commission and the Federal Equal Employment Opportunity Commission in August 2018. (*Id.* ¶ 25.)

The PHRC issued a notice of closure in December 2020, and Dulgiyer sued Defendants in the Philadelphia County Court of Common Pleas on January 5, 2022. (*Id.* ¶¶ 27-28.) His complaint was served on Defendants the following week. (*Id.* ¶ 29.) Nine days later, "Defendants'[1] general counsel" asked to meet with Dulgiyer to discuss his claims. (*Id.* ¶ 30.) Distrustful of the sudden interest in his unaddressed grievances, Dulgiyer declined the meeting. (*Id.* ¶ 30.) He was fired the next month "for allegedly having violated social distancing rules, policies[] and procedures." (*Id.* ¶ 31.)

The Common Pleas Court later dismissed Dulgiyer's claims without prejudice for failure to exhaust his administrative remedies with the PHRC. (*Id.* ¶ 37.) However, on February 12, 2023, the agency informed Dulgiyer it was reopening his case for further investigation. (*Id.* ¶ 38.) Eleven days after that, it notified him it was closing the investigation, entitling Dulgiyer to file a civil action. (*Id.*) The EEOC sent Dulgiyer a right to sue letter for the same matter on August 2, 2023. (*Id.* ¶ 39.) After he was fired on February 28, 2022, Dulgiyer had also filed a separate, second charge with the EEOC for national origin discrimination and retaliation. (*Id.* ¶ 40.) The EEOC issued a right to sue letter for those allegations on August 25, 2023. (*Id.*) Dulgiyer filed this lawsuit two months later. (*Id.* ¶ 41.)

He alleges national origin discrimination, disparate treatment, harassment, unequal pay (Count I) and retaliation (Count II) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, unequal pay, discrimination, harassment

---

[1] The Complaint does not distinguish between Dulgiyer's employers, often referring to them collectively as "Defendants."

and retaliation in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et. seq.* (Count III), Intentional Infliction of Emotional Distress (Count IV) and Civil Conspiracy (Count V).

## II

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain facts sufficient to state a claim that is facially "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the facts pleaded permit a court to make the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* at 678-79 (quoting *Twombly*, 550 U.S. at 570).

Determining plausibility is a "context-specific task" requiring a court to use its "judicial experience and common sense." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (quotations omitted). In making this determination, the court assumes well-pleaded facts are true, construes those facts in the light most favorable to the plaintiff, and draws reasonable inferences from them. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016). "[C]onclusory assertions of fact and legal conclusions" are not entitled to the presumption of truth. *Schuchardt*, 839 F.3d at 347. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Additionally, courts may consider EEOC and PHRC filings and certain related documents at the motion to dismiss stage. *See Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000) ("we may consider the EEOC charge and related EEOC documents, including the letter from the EEOC summarizing its investigation, the right to sue letter, and the intake questionnaire, either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record, without converting this motion to one [for] summary judgement").

### III

### A

#### 1

Title VII plaintiffs in Pennsylvania must "exhaust all required administrative remedies before bringing a claim for judicial relief," which includes timely filing charges of discrimination with the EEOC. *Mahan v. City of Philadelphia*, 296 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163-64 (3d Cir. 2013)).[2] More specifically, Title VII plaintiffs in Pennsylvania must "file a complaint with the EEOC within 300 days of the alleged unlawful employment practice." *Mandel*, 706 F.3d at 165; *see also* 42 U.S.C. § 2000e-5(e)(1). Additionally, "a civil action under Title VII must be commenced within 90 days of receiving a right-to-sue letter from the EEOC." *Rockmore v. Harrisburg Prop. Serv.*, 501 F. App'x 161, 164

---

[2] Technically, plaintiffs in states that provide their own administrative remedies for employment discrimination, including Pennsylvania, must file a charge of discrimination "with the PHRC and the EEOC." *Mahan*, 296 F. Supp. 3d at 717; *Woodson v. Scott Paper Co.*, 109 F.3d 913, 926 (3d Cir. 1997); 42 U.S.C. § 2000e-5(c). But a "worksharing agreement" between the two agencies allows plaintiffs "to proceed in court under Title VII without first filing with the PHRC." *Woodson*, 109 F.3d at 926.


(3d Cir. 2012); *see also* 42 U.S.C. § 2000e-5(f)(1). This 90-day time limit is "akin to a statute of limitations." *Rockmore*, 501 F. App'x at 164.

Under Title VII, each "discrete act" of discrimination "constitutes a separate actionable 'unlawful employment practice.'" *Nat'l Passenger R.R. Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Each discrete discriminatory act "starts a new clock for filing charges alleging that act," so a discrete act triggers its own limitations period. *Id.* at 113 Such acts "are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Id.* A discriminatory pay raise is a discrete act. *White v. Gallagher Bassett Servs.*, No. 02-2364, 2003 WL 302407, 2003 U.S. Dist. LEXIS 2051, at *7-9 (E.D. Pa. Feb. 4, 2003); *see also Mikula v. Allegheny Cnty.*, 583 F.3d 181, 182-83, 186-87 (3d Cir. 2009) (*per curiam*).

Under the paycheck accrual rule, "each paycheck issued pursuant to a discriminatory decision is a discrete discriminatory act under Title VII." *Johnson v. Fed. Express Corp.*, 996 F. Supp. 2d 302, 313 (M.D. Pa. 2014). Consistent with this rule, Title VII pay discrimination claims are timely as to paychecks received within the limitations period if they reflect a "periodic implementation" of a previous intentional discriminatory employment decision. *Mikula*, 583 F.3d at 186; 42 U.S.C. § 2000e-5(e)(3)(A); *see also Knox v. PPG Indus.*, No. 2:15-1434, 2016 WL 279004, 2016 U.S. Dist. LEXIS 7562, at *18-19 n.5 (W.D. Pa. Jan 22, 2016) (where the plaintiff was denied a raise more than 300 days before filing her EEOC charge, her claim was timely insofar as it was "premised on paychecks received after [the 300-day mark] which reflect[ed] the periodic implementation of the previously made compensation decision") (internal quotation marks omitted).

2

To proceed under the PHRA, plaintiffs must file an administrative complaint with the PHRC within 180 days of the allegedly discriminatory acts. *Mandel*, 706 F.3d at 164; 43 P.S. § 959(h). Plaintiffs have two years from "the date of notice that the PHRC closed the complaint" to file a lawsuit asserting claims under the PHRA. *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 475 (3d Cir. 2001); *see also* 43 P.S. § 962(c)(2) ("An action under this subsection shall be filed within two years after the date of notice from the Commission closing the complaint").

The PHRA is generally "construed consistently with interpretations of Title VII." *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1084 (3d Cir. 1995). Courts therefore apply the discrete act rule to PHRA claims as well. *See, e.g.*, *Ingram v. Vanguard Grp., Inc.*, No. 14-3674, 2015 WL 4394274, 2015 U.S. Dist. LEXIS 93016, at *35 (E.D. Pa. July 17, 2015) ("Under the PHRA, Plaintiffs had 180 days from the date of the discrete discriminatory act to file an administrative charge"). When a plaintiff alleges violations of Title VII and the PHRA, the 300-day deadline governs the Title VII claims and the 180-day deadline governs the PHRA claims. *See Mandel*, 706 F.3d at 164-65; *Brown v. Tait Towers Mfg., LLC*, No. 21-4573, 2022 WL 206177, 2022 U.S. Dist. LEXIS 11953, at *11 (E.D. Pa. Jan, 21, 2022).

B

Both the Synthes and Jabil Defendants contend Dulgiyer's disparate pay claims are barred by the statute of limitations. Their motions focus on Dulgiyer's first administrative charge of discrimination, filed with the PHRC and EEOC on August 1 2018, rather than his second, which he filed with the EEOC on March 2, 2022.

7

The Jabil Defendants argue, correctly, that because they are named only in the second charge, Dulgiyer can state against them Title VII and PHRA unequal pay claims to the extent they are based on conduct that occurred within that charge's limitations period.  As a result, Dulgiyer can only state unequal pay claims against them under Title VII based on paychecks received within 300 days before he filed the second charge.  He may only base his corresponding PHRA claims on paychecks received within 180 days before he filed that charge.

The Synthes Defendants make more fact-intensive arguments about when Dulgiyer's first charge was considered filed.  These arguments are better addressed at summary judgment.

C

The Jabil Defendants argue the lion's share of Dulgiyer's unequal pay claims against them are time-barred.  (Jabil Defs.' Mem. in Supp. of Mot. to Dismiss 16, ECF No. 10-2.)[3]  A Title VII claim "ordinarily may be brought only against a party previously named in an EEOC action." *Schafer v. Bd. of Pub. Educ. of Sch. Dist. of Pittsburgh, Pa.*, 903 F.2d 243, 251 (3d Cir. 1990).  Dulgiyer did not name the Jabil Defendants in his first administrative complaint with the PHRC and EEOC.  *See* (PHRC Compl., ECF No. 13-3, Ex. D.)[4]  They are, however, clearly named in his March 2, 2022 filing. (EEOC Charge 32, ECF No. 13-3, Ex. G.)  As such, for Title VII purposes, Dulgiyer can state a claim for unequal pay for paychecks received within 300 days of this filing, here

---

[3]    Page numbers are those assigned by ECF unless otherwise specified.

[4]    Many of these exhibits are attached to multiple parties' filings.  When referring to exhibits attached by multiple parties, the Court cites those attached by the Synthes Defendants for consistency's sake and to avoid confusion.

8

May 5, 2021. *See Mandel*, 706 F.3d at 165; 42 U.S.C. § 2000e-5(e)(1). For purposes of the PHRA, he can state a claim for checks received within 180 days of March 2, 2022, or September 2, 2021. *See Mandel*, 706 F.3d at 165; 43 P.S. § 959(h). Dulgiyer's unequal pay allegations in Counts I and II are accordingly dismissed with prejudice as to paychecks received before May 6, 2021, and his corresponding allegations in Count III are dismissed with prejudice as to paychecks before September 2, 2021.[5]

D

The Synthes Defendants argue both that Dulgiyer filed his administrative complaint with the PHRC and EEOC too late and that he waited too long to file suit after the PHRC closed the case. (Synthes Defs.' Mem. in Supp. of Mot. to Dismiss 13-14, ECF No. 13-2.)

The sequence and significance of events here is both complicated and disputed. Resolution of these disputes requires the Court to determine when Dulgiyer's administrative complaint was considered filed, when the PHRC considered this matter closed, whether, and if so, when, it considered this matter reopened, and whether any amended administrative complaint relates back to the first one. The parties attach

---

[5] Dulgiyer may still rely on otherwise time-barred payment decisions in order to prove his timely filed claims. *See Morgan*, 536 U.S. at 113 (while time-barred discrete acts are not actionable, plaintiffs may use these "prior acts as background evidence in support of a timely claim").
  Additionally, Dulgiyer's Title VII and PHRA claims may entitle him to back pay for unequal pay that predates the filing of his administrative charges. *See* 42 U.S.C. § 2000e-5(e)(3)(B) (providing entitlement to "recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge"); 43 P.S. § 962(c)(3) ("Back pay liability shall not accrue from a date more than three years prior to the filing of a complaint charging violations of this act"); *Schurgot v. Se. Pa. Transp. Auth.*, No. 17-939, 2017 WL 3226859, 2017 U.S. Dist. LEXIS 119467, at *9-10 (E.D. Pa. July 31, 2017) (rejecting a defendant's argument that recoverable back pay should be confined to the limitations period before the plaintiff filed charges with the EEOC and PHRC).

9

several voluminous exhibits in support of their respective positions. The Synthes Defendants, however, argue the Court cannot take judicial notice of some of Dulgiyer's exhibits. (Synthes Defs.' Reply in Supp. of Mot. to Dismiss 2 n. 2, ECF No. 15.) They ask the Court to resolve these fact-intensive disputes based on only part of the story, which it will not do. This argument is better suited for summary judgment, where both parties can paint a complete picture of relevant events.

## IV

### A

#### 1

Again, under Title VII, plaintiffs "must file a charge of discrimination with the EEOC and procure a notice of the right to sue." *Mandel*, 706 F.3d at 163. Similarly, before filing suit under the PHRA, plaintiffs "must first exhaust all administrative remedies by filing a charge of discrimination (also referred to as an administrative complaint) with the [PHRC] or EEOC." *Hills v. Borough of Colwyn*, 978 F. Supp. 2d 469, 478 (E.D. Pa. 2013).

And as discussed, Title VII claims "ordinarily may be brought only against a party previously named in an EEOC action." *Schafer*, 903 F.2d at 251. PHRA claims are subject to the same requirement. *Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 605 n.4 (E.D. Pa. 2015); *McLaughlin v. Rose Tree Media Sch. Dist.*, 1 F. Supp. 2d 476, 481-82 (E.D. Pa. 1998).[6] This requirement ensures defendants are given notice of allegations against them such that they have "an opportunity to resolve the situation

---

[6] The PHRA's procedure for the filing of administrative complaints requires these complaints to "state the name and address of the person, employer, labor organization or employment agency alleged to have committed the unlawful discriminatory practice complained of." 43 P.S. § 959(a).

without resort to further litigation." *McLaughlin*, 1 F. Supp. at 482. Courts in the Third Circuit recognize an exception "when the unnamed party received notice [of the charge] and" shares a "commonality of interest with the named party." *Schafer*, 903 F.2d at 252; *Harter v. Cnty. of Washington*, No. 11-588, 2011 WL 6116461, 2011 U.S. Dist. LEXIS 140998, at *20 (W.D. Pa. Dec. 8, 2011).

2

The Synthes Defendants first argue Dulgiyer cannot state a Title VII or PHRA claim against Johnson & Johnson because his first charge of discrimination, filed with the PHRC and EEOC, did not name Johnson & Johnson. (Synthes Defs.' Mem. in Supp. of Mot. to Dismiss 9-10.)

Dulgiyer's initial PHRA questionnaire names "J&J Services, INC Agent for Synthes USA Products" as his employer. (PHRC Questionnaire 2, 10, ECF No. 14-3.) It also says a lawyer who said he was "from the J&J employee relations department" told Dulgiyer he had been "assigned to look into concerns he recently raised" with his supervisors. (*Id.* at 9.)

Naming a party in a questionnaire, however, does not satisfy Title VII and the PHRA's exhaustion requirements. *Frymoyer v. City of Reading*, No. 15-6805, 2016 WL 3632733, 2016 U.S. Dist. LEXIS 87875, at *10-11 (E.D. Pa. July 6, 2016) ("to determine whether a plaintiff has exhausted her administrative remedies as to certain defendants, the operative document is the formal charge, not the intake questionnaire"); *Smith v. Del. River Stevedores*, No. 07-1864, 2008 WL 4890135, 2008 U.S. Dist. LEXIS 93808, at *8-9 (E.D. Pa. Nov. 10, 2008).

Dulgiyer responds that he nevertheless identified Johnson & Johnson in the body of the administrative complaint. (Pl.'s Mem. in Opp. to Synthes Defs.' Mot. to Dismiss 8, 11-12, ECF No. 14-2.) Often, naming a defendant in the body of an administrative complaint, even if they are "not named as a defendant in the caption of the administrative proceeding," gives that defendant "sufficient notice to satisfy the general [naming] rule." *McLaughlin*, 1 F. Supp. 2d at 482. While courts have found "fleeting references" to defendants in administrative complaints to satisfy this requirement, they have done so by determining that "said parties were adequately put on notice." *See Bartlett v. Kutztown Univ.*, No. 13-4331, 2015 WL 766000, 2015 U.S. Dist. LEXIS 21665, at *47-48 (E.D. Pa. Feb 23, 2015); *Reese v. Northwest Bank*, No. 3:21-3, 2021 WL 2720837, 2021 U.S. Dist. LEXIS 123569, at *11-13 (W.D. Pa. July 1, 2021).

The body of Dulgiyer's PHRA complaint includes a statement that "Respondent The DePuy Synthes is part of the Johnson & Johnson Family Companies." (PHRC Compl. 19.) But this reference "hardly put[s]" Johnson & Johnson "on notice that [it] engaged in any discriminatory conduct." *See Meyers v. Cal. Univ. of Pa.*, No. 12-1258, 2013 WL 795059, 2013 U.S. Dist. LEXIS 29828, at *35-36 (W.D. Pa. Mar. 4, 2013).

Dulgiyer has thus failed to exhaust his administrative remedies as to Johnson & Johnson with respect to claims arising out of his first administrative charge. The same, however, cannot be said for claims arising out of the second. As discussed *infra* subsection IV.B, Dulgiyer adequately identifies Johnson & Johnson in the body of his second administrative charge, filed in 2022. (EEOC Charge 32.) The Court dismisses,

12

albeit without prejudice, Dulgiyer's Title VII and PHRA claims against it only to the extent that they arise out of his first, rather than his second administrative charge.

Dulgiyer may amend these claims if he can satisfy an exception; if the unnamed party received notice and shares a "commonality of interest" with the named party. *Schafer*, 903 F.2d at 252. Dulgiyer mentioned this exception in his briefing but asserted there was "no need to consider" it because he believed he had adequately identified Johnson & Johnson in his PHRC complaint. (Pl.'s Mem. in Opp. to Synthes Defs.' Mot. to Dismiss 11.)

B

The Synthes Defendants argue Dulgiyer cannot state a retaliation claim against them because his second charge filed with the PHRC and EEOC named only the Jabil Defendants but none of the Synthes Defendants, while his first administrative charge did not allege retaliation. (Synthes Defs.' Mem. in Supp. of Mot. to Dismiss 10); Synthes Defs.' Reply in Supp. of Mot. to Dismiss 4-5.)

1

Whether a plaintiff has exhausted a claim by presenting it in an administrative charge depends on "whether the acts alleged in the subsequent [judicial complaint] are fairly within the scope of the prior [administrative charge], or the investigation arising therefrom." *Kopko v. Lehigh Valley Health Network*, 776 F. App'x 768, 773 (3d Cir. 2019) (alteration in original) (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)). This inquiry is "not limited to the four corners of the administrative charge." *Id.* (citing *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). "The parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can

13

reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the EEOC." *Mandel*, 706 F.3d at 163 (cleaned up) (quotation omitted).

2

Dulgiyer's first charge does not contain any allegations of retaliation. *See* (PHRC Charge 18-21.) It describes alleged pay discrimination and discussions Dulgiyer had with a supervisor and lawyer but does not indicate any retaliatory conduct as a result. *See* (*id.*) While he points to allegations included in his PHRC questionnaire, "the substantive allegations made in the EEOC charge of discrimination and the intake questionnaire must be considered as two separate and distinct documents." *Rogan*, 113 F. Supp. 2d at 788. Issues "raised in the intake questionnaire which are not part of the actual charge" may not "be considered a part of that charge." *Id.* Treating allegations in the questionnaire as "part of the charge itself . . . would be circumventing the role of the [EEOC and PHRC] as well as depriving the defendant of notice of all claims against it." *Id.*; *see also Binder v. PPL Servs. Corp.*, No. 06-2977, 2009 WL 3738569, 2009 U.S. Dist. LEXIS 103814, at *16-20 (E.D. Pa. Nov. 5, 2009) ("To the extent that Binder argues that his claims of disability discrimination and retaliation are set forth in the PHRC Questionnaire, we conclude, as many other courts in this Circuit have, that allegations set forth in a questionnaire are insufficient to satisfy the exhaustion requirement").

Additionally, the box for "retaliation" in the PHRC questionnaire is unchecked. (PHRC Questionnaire 3); *Hewitt v. BS Transp. of Ill., LLC*, 355 F. Supp. 3d 227, 235 (E.D. Pa. 2019) (retaliation was not within the scope of an EEOC administrative

complaint where the box for "retaliation" was unchecked and the body of the complaint "aver[red] no facts supporting a claim of retaliation"); *Mandel*, 706 F.3d at 164 (an EEOC charge of discrimination "did not encompass claims of retaliation" where "the box for retaliation was not checked" in either the questionnaire or administrative complaint and the complaint "failed to allege any retaliatory conduct").

Moreover, the PHRC's eventual findings show it only evaluated whether sufficient evidence existed "to establish discrimination." (PHRC Determination 24, 26-27, ECF No. 13-3, Ex. E). It does not mention retaliation at all. *See* (*id.*); *Binder*, 2009 U.S. Dist. LEXIS 103814, at *20-21 ("Looking at the PHRC Findings of the Investigation . . . [t]here is no mention of disability discrimination or retaliation"). And the EEOC adopted these same findings in this matter. (EEOC Determination 29-30, ECF No. 13-3, Ex. F.)

The body of the second charge, however, names "DePuy Synthes," "Synthes USA Products, LLC" and "Johnson & Johnson (possibly J&J Services, Inc.)," as Dulgiyer's prior employers. (EEOC Charge 32.) This charge explicitly alleges retaliation, and the "retaliation" box is checked. (*Id.*) It states Dulgiyer was "retaliated against by Respondent, Jabil, Inc., *and other entities*." (*Id.*) (emphasis added). Moreover, it contains allegations that "agreements and contracts involving liabilities" existed "throughout the purchases and buyouts of Mr. Dulgiyer's employers." (*Id.* at 33.) Consequently, there was "an interest in extinguishing claims and retaliating against employees for bringing such claims that passed, transferred, and continued to exist throughout Mr. Dulgiyer's employment." (*Id.*) Alleged retaliation by the Synthes Defendants is therefore within the scope of an investigation that would reasonably

15

grow out of these claims. *See Mandel*, 706 F.3d at 163. These allegations are sufficient to put the Synthes Defendants on notice of Dulgiyer's retaliation claims against them. *McLaughlin*, 1 F. Supp. 2d at 482.[7]

Dulgiyer can state a Title VII and PHRA retaliation claim against the Synthes Defendants for conduct arising out of his second administrative charge, but not his first. *See Smith v. House*, No. 19-1012, 2020 WL 208930, 2020 U.S. Dist. LEXIS 7268, at *3-6 (E.D. Pa. Jan. 13, 2020) (treating incidents falling within "the scope of [a] first EEOC charge" as distinct from those "within the scope of the second EEOC charge.")

V

Dulgiyer also alleges intentional infliction of emotional distress but now concedes he fails to state a claim. To state an IIED claim, a plaintiff must show the defendant intentionally or recklessly engaged in "extreme and outrageous" conduct which caused severe emotional distress to the plaintiff. *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 914 (3d Cir. 1982) (quotation omitted). The plaintiff also "must suffer some type of resulting physical harm due to the defendant's outrageous conduct." *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005).[8]

---

[7] The Synthes Defendants also argue Dulgiyer cannot have exhausted retaliation claims against them through the second charge since it was not served on them. (Synthes Defs.' Reply in Supp. of Mot. to Dismiss 4 n.5.) But "a plaintiff cannot be held responsible for the EEOC's failure to properly name a defendant or serve a copy of the charge." *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d. 424, 431 (E.D. Pa. 2007).

[8] While there are exceptions to the physical injury requirement, *Katzatsky v. King David Mem'l Park*, 527 A.2d 988, 992-94 (Pa. 1987), none are relevant here. *See Sharifi v. Cross*, No. 21-2873, 2022 WL 125930, 2022 U.S. Dist. LEXIS 6592, at *28-30 (E.D. Pa. Jan. 12, 2022) (dismissing an IIED claim in a Title VII employment discrimination case, because, among other reasons, the plaintiff did not claim "that she suffered any physical injury").

The Synthes Defendants move to dismiss, in part, because Dulgiyer has not alleged any physical harm.  (Synthes Defs.' Mem. in Supp. of Mot. to Dismiss 14-15, 17-18.)  The Jabil Defendants also seek dismissal of the IIED claim on separate grounds. (Jabil Defs.' Mem. in Supp. of Mot. to Dismiss 11-13.)  Dulgiyer does not oppose either motion, conceding he cannot satisfy the physical harm requirement.  (Pl.'s Mem. in Opp. to Synthes Defs.' Mot. to Dismiss 17); (Pl.'s Mem. in Opp. to Jabil Defs.' Mot. to Dismiss 8-9, ECF No. 12-2.)  Because amendment would be futile, the Court dismisses this claim with prejudice.  *See Kurtz v. Westfield Ins.*, 610. F. Supp. 3d 703, 710 (E.D. Pa. 2022); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

VI

Finally, Dulgiyer alleges civil conspiracy.  While the Complaint does not specify whether Dulgiyer brings his conspiracy claim under federal or Pennsylvania law, his briefing indicates he intends to bring a federal claim under 42 U.S.C. § 1985(3).  (Pl.'s Mem. in Opp. to Jabil Defs.' Mot. to Dismiss 6-8.); (Pl.'s Mem. in Opp. to Synthes Defs.' Mot. to Dismiss 16-17.)   To state such a claim, a plaintiff must allege: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons [of] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *Schutt v. Melmark, Inc.*, 186 F. Supp. 3d 366, 376 (E.D. Pa. 2016) (quoting *Lake*, 112 F.3d at 685).

But the "deprivation of a right created by Title VII cannot be the basis for a cause of action under [Section] 1985(3)." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*,

17

442 U.S. 366, 378 (1979); *see also Zurchin v. Ambridge Area Sch. Dist.*, 300 F. Supp. 3d 681, 693-94 (W.D. Pa. 2018). In some instances, "the fact that the conduct can be said to violate Title VII as well as [Section 1985] does not operate to bar the [Section] 1985 claim." *Reynolds v. Avalon*, 799 F. Supp. 442, 339 (D.N.J. 1992). For instance, the conspiracy claim could be based on "some other federal source," such as the Fourteenth Amendment Equal Protection Clause. *Id.* But here, Title VII is the only federal law Dulgiyer relies on. His Section 1985(3) conspiracy claim is accordingly dismissed with prejudice.

To the extent Dulgiyer wishes to assert a state law civil conspiracy claim, he fails to do so. He states, in conclusory fashion, that "Defendants," through their "actions and/or inactions . . . intentionally conspired with one another . . . to unlawfully harass, disparately treat, and retaliate" against him. (Compl. ¶¶ 85-86.) "Mere conclusory allegations stating that there was a 'conspiracy' or 'an agreement to act unlawfully' will not suffice." *Bennett v. Cnty. of Lycoming*, No. 1:22-0838, 2022 WL 4079622, 2022 U.S. Dist. LEXIS 160661, at *6-7 (M.D. Pa. Sept. 6, 2022) (citations omitted).

In his briefing, Dulgiyer explains his theory with further specificity. He contends the Jabil Defendants terminated him because of his lawsuit against the Synthes Defendants, so an agreement between his "consecutive employers" to retaliate against him must "exist by inference." (Pl.'s Mem. in Opp. to Jabil Defs.' Mot. to Dismiss 7.) But he never says that in his Complaint. And legal theories set forth in briefs are "helpful only to the extent that they find support in the allegations set forth in the complaint." *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). "It is axiomatic that the complaint may not be amended by the briefs in

opposition to a motion to dismiss." *Carpenters Health & Welfare Fund of Phila. & Vicinity v. Mgmt. Res. Sys., Inc.*, 837 F.3d 378, 383 (3d Cir. 2016) (quotation omitted). Dulgiyer may allege these facts to support a state law conspiracy claim in an amended complaint should he choose to file one.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.